Smith, J.
The errors assigned in this case are, first, that the court erred in arresting the evidence of plaintiff from the jury and rendering a judgment for the defendant, and second, in overruling the motion for a new trial.
The petitioner after setting out her appointment as administratrix of the estate of Frank Stegeman, her deceased husband, and that she is the mother of his five living minor children, alleges that he bad come to his death by reason of the negligence of Humbers, in this manner. She says that on May 1, 1884, the defendant was in custody and control of the ruins of the court-house, lately destroyed by fire, as contractor, employe, superintendent and director, with full power to direct and control men and implements in leveling and removing the walls, etc. That shortly before this be bad held himself out to the public as a man of experience in such business, and hired laborers for such work, and among others the deceased, who reposed confidence in him as a man of experience in such business. That deceased was a servant in his employ. That while so employed on said 1st day of May, without fault or negligence on his part, he was killed by reason of the negligence of defendant, who negligently and wrongfully ordered *53 him to go up a ladder leaning against a wall in a dangerous condition, and tear it' down, and that while so engaged, the wall fell and he was killed. That defendant had no experience ort knowledge of such business, and his action in ordering deceased to do as he did, was wrongful and negligent.
Tde answer denied all the allegations of the petition, except that the plaintiff was the administratrix of deceased’s estate.
The case was tried to a jury Dec. 23, 1885, and at the close of the evidence offered for the plaintiff, the defendant moved the court to arrest the evidence from the jury and render a judgment for the plaintiff, which was done.
To this ruling of the court no exception was taken, but on December 26, a motion for a new trial was filed, alleging as ground therefor, the action of the court above mentioned. This motion was not disposed of until the next (January) term, when it was overruled, and proper exception taken to that, and a bill of exceptions signed setting out all the evidence offered by plaintiff at the trial term.
On this state of facts we are of the opinion, that in accordance with well settled rules of practice, we can not now consider the’question as to whether the court erred in withdrawing the plaintiff’s evidence from the jury. In the first place, an exception should have been taken to the action of the court at the time; and even if that were not essential, it is clear that to review such action of the court it was absolutely necessary that the bill of exceptions should have been taken at the trial term. But a motion for a new trial having been filed at the trial term, and a bill of exceptions taken at the term at which the motion was overruled, it may be that the court can properly look at the evidence in the case, and determine, not whether there was evidence tending to prove all the facts necessary to have been shown by the plaintiff to entitle him to recover, but only whether, on this evidence, it is manifest that the judgment df the court was against the law and the evidence. We are not sure that such is the proper practice, as the only ground assigned for a new trial in the motion was, that the evidence was improperly withdrawn from the jury, and no exception was taken to this action, and the statute, sec. 5305, allows a new trial to be granted “ for errors of law *54 occurring at the trial, and excepted to by the party making the application.
But in analogy to the rule which allows a reviewing court to consider errors subsequently assigned, but not excepted to at the time, when all of the evidence .is before the court, to see if substantial justice has been done, we have deemed it proper to examine this evidence for this purpose.
The claim of the plaiñtiff is, that at the time Stegeman met his death, he was the servant of Humbers, and that by the negligence of the latter, or another of his servants under whose orders he acted, he was killed.
The evidence offered by the plaintiff, established beyond controversy that Humbers was an employe of the commissioners to rebuild the court-house. That he was employed by them to supervise the removal of the. walls and rubbish, and that all the men at work under him at that business, including Stegeman himself, were hired and paid by said board of commissioners, and not by Humbers.
We think it clear, then, that Stegeman being the servant of the commissioners and not of Humbers, that the latter is not liable for the negligence of another servant of the commissioners, by which Stegeman was injured, though both such other servant and Stegeman himself, were working under the general direction of Humbers, and the other servant was the superior-of Stegeman, who acting under his orders was killed by the negligence of such other servant — although Humbers had the superintendence of both, he was master of neither, in the sense which makes the doctrine of respondeat superior apply to the case.
See 6 Dunford & East., 411; also the cases cited by counsel for plaintiff in error, viz.': Murray v. Currie, Eng. Law Rep., 6 Com. Pleas, 24; Murphy v. Carroll, 8 Hurlstone & Coltman, 462.
In this case the board of commissioners for rebuilding the court-house were the master, and all of the others the servants ; but such board by the statute under which it was constituted, is exempt from any such liability.
But if Humbers himself was negligent in the discharge of his duties, or committed a positive act of misfeasance or tres *55 pass, by means of which the deceased came to his death, he ■can not shelter himself under the plea that the master is liable, and not himself. Thompson on Negligence, 1060-1062.
What are the facts as shown by the evidence on this point ? The plaintiff proved by Woodington, that he was foreman under Humbers on this part of the work, and Sullivan foreman under him of the gang in which Stegeman was at work. That he saw the deceased on a ladder in a dangerous position, and told him he ought not to stand there, and that he replied that Sullivan, the boss, had told him to do it in that way, and remained there, and the wall was in a bad condition, and it was •dangerous for him to remain.
Crampton saw Stegeman on the ladder. In his examination in chief, this witness said he saw Humbers at the ladder before the wall fell, and that he said to the men, “ go up and tear that wall down ” — this was ten or fifteen minutes before Stegeman went up the ladder. But on cross-examination it appears from the bill that Humbers and Woodington were pointed out to the witness in the court-room, and he then testified that he did not know which of the two it was who was there at the time described, and who ordered the men to go up the wall and tear it down.
Sullivan testified that he was the foreman of the gang tearing down this wall, and that he directed Stegeman to go up the ladder, and Butler testified that any one could see that the wall was dangerous and could be pushed over with a stick or the hand.
This is substantially the evidence offered on the part of the plaintiff, and were it not for the single statement of Cramp-ton, that it was Humbers who ordered Stegeman to go up the ladder and tear the wall down, we see no evidence tending to show that Humbers had the slightest connection with the occurrence, that he was there, at the time, or was guilty of any misfeasance or trespass upon the rights of Stegeman.; or to show any right whatever on the part of the plaintiff to recover in the action. And even this statement is practically withdrawn by Crampton, who on seeing Humbers in court, says that he does not know it was he who gave the order. All the other evi *56 dence is to the effect that it was notHumbers who did it, and the strong probability is that he was not there at the time.
Wm. Kirk and J. G. Robinson, Jr., for plaintiff in error.
Frank O. Suire, for defendant in error.
There is doubt, then, whether there was any evidence which rendered it proper that the case should go to the jury; but if there was, it is clear that the verdict should have been for thé defendant, and that the judgment was according to substantial justice and should be allowed to stand.